FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 MAR 27 AM 11:51

Case No.: 6:18-cv-460-oRL-40TBS

| | |
|---|---|
| MILTON ANTONIO BELLOSO, individually and on behalf of all those similarly situated, | **CLASS ACTION** |
| Plaintiff, | |
| v. | |
| ASPLUNDH TREE EXPERT, CO. and ASPLUNDH TREE EXPERT, LLC, | |
| Defendants. | |
| _____/ | |

### PLAINTIFF'S CLASS ACTION
### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, MILTON ANTONIO BELLOSO, ("Mr. Belloso"), by and through undersigned counsel, individually, as Class Representative on behalf of all other similarly situated employees, and in the public interest, brings the following Class Action Complaint pursuant to the Fair Credit Reporting Act ("FCRA") as of right against ASPLUNDH TREE EXPERT, CO. and ASPLUNDH TREE EXPERT, LLC. (hereinafter collectively "Asplundh"), and states as follows:

**I.    SUPPORTING FACTS AND ALLEGATIONS**

1. Asplundh provides tree pruning and removal, right-of-way clearing and maintenance, vegetation management, and emergency storm work and support (collectively "tree pruning and removal") throughout the United States, Canada, Australia, and New Zealand.

2. Asplundh employs over 30,000 employees throughout the United States, Canada,

1

Australia, and New Zealand.

3. Asplundh routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment actions, such as hiring, termination, reduction of hours, change in position, and failure to promote.

4. Asplundh utilizes companies such as Insurance Information Exchange ("iiX") to conduct its background checks and obtain consumer reports.

5. The use of consumer report information for employment purposes is not *per se* unlawful, but it is subject to strict discourse and authorization requirements under the FCRA.

6. Asplundh willfully violated these requirements in multiple ways in systematic violation of Mr. Belloso's rights and the rights of other putative class members.

7. Asplundh violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Mr. Belloso and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute. Under this subsection of the FCRA, Asplundh is required to disclose to its employees – *in a document that consists solely of the disclosure* – that it may obtain a consumer report.

8. Asplundh willfully violated this requirement by failing to provide Mr. Belloso and the putative class members with proper disclosure in a document that consists solely of the disclosure before procuring consumer reports. This practice violates longstanding regulatory guidance from the Federal Trade Commission, as well as case law.

9. Asplundh requires employees to execute a single document that is (3) three pages long that contains a disclosure and authorization that attempts to comply with the FCRA. (*See* Exhibit "A.")

2

10. Rather than being a standalone disclosure, in addition to the disclosure the document contains, among other things: (1) notification, consent, and authorization that the background check may be processed in a foreign country; (2) notification, consent, and authorization that the background check may be accessible to law enforcement and national security authorities of the foreign jurisdiction; (3) state-specific disclosures for California, Massachusetts, Minnesota, and Oklahoma that has nothing to do with Mr. Belloso's employment; (4) consent and authorize "the gathering of this information" by Asplundh and those Asplundh has engaged to request and obtain this information; and (5) a liability release and hold harmless clause. All of these extraneous additions to the form stretched what should be a simple disclosure form to three full pages of eye-straining type face writing.

11. Asplundh's disclosure violates the FCRA's stand-alone document requirement by including information other than the disclosure, to include the extraneous additions outlined in paragraph 10.

12. Mr. Belloso and putative class members were not provided with a stand-alone FCRA document.

13. In this Complaint, Mr. Belloso asserts FCRA claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Consumer Report Background Check Class" consisting of all employees or prospective employees of Asplundh in the United States who were the subject of a consumer report that was procured by Asplundh (or that Asplundh caused to be procured) during the five years preceding the filing of Mr. Belloso's original Complaint.

14. On behalf of himself and the Putative Class members, Mr. Belloso seeks statutory damages, costs and attorneys' fees, and other appropriate relief pursuant to the FCRA.

15. Mr. Belloso is a former employee of Asplundh and is a member of the putative class.

16. Mr. Belloso worked for Asplundh from approximately August 2011 to September 27, 2017. Mr. Belloso performed the majority of his work for Asplundh in Orange County, Florida.

17. While employed by Asplundh, Mr. Belloso was required to execute the Disclosure that violates the FCRA in 2017. (*See* Exhibit "B").

18. Upon information and belief, Asplundh ran a background check constituting a consumer report, as defined by the FCRA, on Mr. Belloso.

19. Asplundh had numerous other employees execute the Disclosure that violates the FCRA, (*see* Exhibit "C"), prior to running a background check constituting a consumer report, as defined by the FCRA, on the employee.

20. The background checks performed by Asplundh were illegal and performed in violation of the FCRA.

## II. JURISDICTION AND VENUE

21. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

22. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## III. ALLEGATIONS REGARDING ASPLUNDH'S BUSINESS PRACTICES

23. Asplundh conducts background checks on many of its job applicants as part of a standard screening process. In addition, Asplundh conducts background checks on existing

employees from time-to-time during the course of their employment.

24. Asplundh does not perform these background checks in-house. Rather, Asplundh relies on outside consumer reporting firms, such as iiX, to obtain this information and report it to Asplundh. These reports constitute "consumer reports" for purposes of the FCRA.

25. Asplundh has violated the disclosure requirement of the FCRA when it failed to present Mr. Belloso with a disclosure in a document that consisted solely of the disclosure as required by the FCRA.

26. Upon information and belief, Asplundh procured a consumer report for information on Mr. Belloso in violation of the FCRA.

27. Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or cause to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii)(emphasis added).

28. Asplundh failed to satisfy these disclosure and authorization requirements of the FCRA.

29. Asplundh does not have a stand-alone FCRA disclosure or authorization form.

30. This practice violates the plain language of the statute and is contrary to case law and regulatory guidance from the FTC.

31. Furthermore, Asplundh has been previously sued for the FCRA's disclosure requirement. *See Gonzalez v. Asplundh Tree Expert, Co.*, Case No.: 8:15-cv-124-EAK-TBM (M.D. Fla. 2015).

32. While it appears that Asplundh has changed its FCRA disclosure and authorization form since *Gonzalez*, the changes it has implemented to its FCRA disclosure and authorization form has brought it further out of compliance with the requirements of the FCRA by adding language of: (1) notification, consent, and authorization that the background check may be processed in a foreign country; (2) notification, consent, and authorization that the background check may be accessible to law enforcement and national security authorities of the foreign jurisdiction; (3) state-specific disclosures for California, Massachusetts, Minnesota, and Oklahoma that has nothing to do with Mr. Belloso's employment; (4) consent and authorize "the gathering of this information" by Asplundh and those Asplundh has engaged to request and obtain this information; and (5) a liability release and hold harmless. None of these clauses appear in the prior version of its disclosure. Compare Exhibit "A" *with Gonzalez v. Asplundh Tree Expert, Co.*, Case No.: 8:15-cv-124-EAK-TBM (M.D. Fla. 2015)(Dkt. 20-1, pgs. 5-6)(Attached as Exhibit "D").

33. Asplundh is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that Asplundh determined that its conduct regarding the disclosure at issue was lawful.

34. The consumer reporting agency (iiX) that provides Asplundh with consumer reports, (Exhibit "A"), has published guidelines, (Exhibit "E"), and sample disclosures and authorization forms, (Exhibit "F"), that do not include all the extraneous additions to the disclosure form at issue.

35. Asplundh knew or had reason to know that the disclosure form at issue was inconsistent with the law in light of the prior litigation, the availability of advice from counsel, and its own consumer reporting agencies sample form not containing all the extraneous additions to the disclosure form at issue.

36. Asplundh willfully disregarded case law, regulatory guidance, and the prior lawsuit when it willfully violated 15 U.S.C. §§ 1681b(b)(2)(A)(i) by adding the extraneous additions to the disclosure form stretching what should be a simple disclosure form to three full pages of eye-straining type face writing.

## IV. CLASS ACTION ALLEGATIONS

37. Belloso asserts his claims on behalf of a putative Consumer Report Background Check Class defined as follows:

> **Proposed Class:** All Asplundh employees or prospective employees in the United States who Asplundh procured or caused to be procured a consumer report within five years of the filing of this Complaint through the date of the final judgment.

38. The putative class is so numerous that joinder of all class members is impractible. Asplundh regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information in the hiring and retaining of employees. Based upon information and belief, Mr. Belloso believes that during the relevant time period hundreds of Asplundh employees and prospective employees satisfy the definition of the putative class.

39. Mr. Belloso's claims are typical of the members of the putative class. Asplundh typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Mr. Belloso are typical of those suffered by other putative class members in accordance with its standard policies and practices.

40. Mr. Belloso will fairly and adequately protect the interests of the putative class, and has retained counsel experiencede in aggregate litigation.

41. Common questions of law and fact exist as to all members of the putative class and predominate over any questions solely affecting individual members of the putative class, including, but not limited to: (a) Whether Asplundh uses consumer report information to conduct background checks on employees and prospective employees: (b) Whether Asplundh's background check practices and/or procedures comply with the FCRA; (c) Whether Asplundh violated the FCRA by procuring consumer report information without making proper disclosures in the form required by the statute; (d) Whether Asplundh violated the FCRA by procuring consumer report information based on invalid authorization; (e) Whether Asplundh's violations of the FCRA were willful; and (f) the proper measurement of statutory damages.

42. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Asplundh. Further, adjudication of each individual class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

43. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Asplundh acted or refused to act on grounds that apply generally to the putative class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

44. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and because a class action is superior to other

available methods for the fair and efficient adjudication of this litigation. Asplundh's conduct as described herein stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against Asplundh, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Asplundh's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single forum.

45. Plaintiff intends to send notice to all members of the putative class to the extent required by Rule 23. The names and addresses of the putative class members are available from Asplundh's records.

## COUNT I
### Failure to Make Proper Disclosure in Violation of FCRA
### 15 U.S.C. § 1681b(b)(2)(A)(i)

46. Mr. Belloso alleges and incorporates by reference the allegations in the preceding paragraphs.

47. In violation of the FCRA, the disclosure that Asplundh required Mr. Belloso and the Consumer Report Background Check Class to complete as a condition of employment with Asplundh does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Asplundh failed to provide a stand-alone document as required by the FCRA.

48. Asplundh violated the FCRA by procuring consumer reports relating to Mr. Belloso and other Consumer Report Background Check Class members without first making proper disclosure in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).

49. The foregoing violations were willful. Asplundh knew it was required to provide a disclosure in a stand-alone form prior to obtaining a consumer report on the Consumer Report Background Check Class members. Unfortunately, Asplundh did nothing to correct their illegal FCRA practices. By failing to do so, Asplundh acted in deliberate or reckless disregard of its obligations and the rights of Mr. Belloso and other Consumer Report Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Asplundh knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA. Asplundh had been involved in FCRA litigation in the past and had available to it substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

50. Mr. Belloso and the Consumer Report Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

51. Mr. Belloso and the Consumer Report Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
### Failure to Obtain Proper Authorization in Violation of FCRA
### 15 U.S.C. § 1681b(b)(2)(A)(ii)

52. Mr. Belloso alleges and incorporates by reference the allegations in the preceding paragraphs.

53. Asplundh violated the FCRA by procuring consumer reports relating to Mr. Belloso and other Consumer Report Background Check Class members without proper authorization. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

54. The foregoing violations were willful. Asplundh knew it was required to provide a disclosure in a stand-alone form prior to obtaining a consumer report on the Consumer Report Background Check Class members. Unfortunately, Asplundh did nothing to correct their illegal FCRA practices. By failing to do so, Asplundh acted in deliberate or reckless disregard of its obligations and the rights of Mr. Belloso and other Consumer Report Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Asplundh knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA. Asplundh had been involved in FCRA litigation in the past and had available to it substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

55. Mr. Belloso and the Consumer Report Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

56. Mr. Belloso and the Consumer Report Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class pray for relief as follows:

A. Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

11

B.    Designating Mr. Belloso as class representative and designating Mr. Belloso's counsel as counsel for the Putative Class;

C.    Issuing proper notice to the putative class at Asplundh's expense;

D.    Declaring that Asplundh committed multiple, separate violations of the FCRA;

E.    Declaring that Asplundh acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

F.    Awarding statutory damages as provided by the FCRA, including punitive damages;

G.    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

H.    Granting other and further relief as this Court may deem appropriate and just.

## VI.    <u>JURY TRIAL DEMAND</u>

Mr. Belloso and the putative class demands a jury trial on all issues contained in this Complaint.

Dated: 3/26/18

Respectfully submitted,

SCOTT C. ADAMS, ESQ.
Florida Bar No.: 0573442
Email: sadams@labaradams.com
N. RYAN LABAR, ESQ.
Florida Bar No.: 0010535
Email: rlabar@labaradams.com
LABAR & ADAMS, P.A.
2300 East Concord Street
Orlando, Florida 32803
(407) 835-8968 (phone)
(407) 835-8969 (facsimile)